**MASONITE CORPORATION et al. v. ROBINSON–SLAGLE LUMBER CO., Inc.**

No. 4775.

District Court, W. D. Louisiana, Shreveport Division.

June 19, 1933.

J. T. Carpenter, Thatcher, Brown, Porteous & Myers, and Wm. H. Cook, all of Shreveport, La., for plaintiffs.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, La., for defendant.

DAWKINS, District Judge.

This is a suit for the involuntary adjudication of the defendant a bankrupt, upon the ground that, while insolvent, it was placed in the hands of a receiver in the state court. The sole issue is one of solvency. The matter was referred to a master, who has found that the defendant was solvent, and the petitioning creditors ask a review upon ten specifications of error, to wit: (1) That the master

did not correctly state the liabilities, having omitted interest and taxes for 1932, the year in which the receiver was appointed; (2) the finding that the receivers had been operating the property at a profit since March 24, 1932, which did not include interest, depreciation, or taxes; (3), (4), (5), and (6) that the master did not use the proper method of ascertaining the fair valuation of defendant's assets from the evidence adduced; (7) and (8) that insufficient weight was given to the return value made for assessment purposes by the corporation and the testimony of the parish assessor thereon; (9) the failure of the master to show in the report the evidence filed by him constituted all that was taken on the hearing; and (10) the finding of the master that on March 24, 1932 (date of appointment of receivers), defendant's assets, taken at a fair valuation, exceeded its liabilities, and it was therefore solvent.

Upon the first point, if the master's finding of an excess of assets over liabilities is correct, it is sufficient to more than take care of any interest upon the indebtedness and that portion of the taxes which had accrued on March 24, 1932.

As to the second ground for review, I do not consider the question of whether the state receivers have or have not made a profit from operations since their appointment of any great value in the determination of this case. Many elements enter into that situation which have no bearing upon the fair value of the defendant's property.

Points 5, 6, 7, and 8 involve the values of the assets found by the master. He concluded that the whole property, at a fair valuation, was well worth in excess of $300,000, while the liabilities amounted to approximately $260,000. I do not deem it necessary to go at length into a recital of the evidence. The appraisers in the state court, at the time the receivers were appointed, valued the company's fixed assets, including real estate, at $279,443.91, and the personal or movable property at $112,042.22, or a total of $391,486.13. No value whatever was placed upon some $77,515.76 of notes which were considered "doubtful." And the same course was pursued with reference to $27,876.46 of open accounts. Of course ordinarily these obligations are of much greater value to a going concern than to a purchaser at forced or liquidation sale. Testimony on behalf of plaintiff tended to show that the liabilities exceeded the assets by from $20,000 to $30,000, while that on behalf of defendant supports the finding of the master. The chief

point of difference in the fixing of values appears to be that the former considered what could be realized under the distressful conditions which existed in March of last year—in other words, the witnesses thought the figures they named were such as would attract buyers; whereas, the defendant's witnesses based their estimates on what buyers would be willing to pay, after taking into consideration the depreciation in values, if they really had a use for the property, as distinguished from speculation. The bankruptcy law itself requires the placing of a "fair" valuation upon property of an alleged bankrupt for the purposes of balancing against his indebtedness, and in my judgment this does not contemplate a situation where only those who can be attracted by the speculative spirit and hope of large profits arising from distress would buy. I do not think the lawmakers ever intended that, for the purposes of bankruptcy, a debtor's property should be valued according to what he could get for it in the conditions which existed at the time the receivers were appointed, when as a matter of common knowledge there was very little disposition to invest in anything, and particularly property of the kind involved here. I think the formula stated by counsel for plaintiff—that is, fair value means what a willing owner, not compelled to sell, would take, and a willing purchaser would pay, when not compelled to buy—is correct, but that this includes the thought, first, that there should be a market and some reasonable competition as between those who have a need or use for the property, and not a condition which would be controlled in great measure by speculation or a desire for large profits on sales made at a sacrifice.

As to the return by the defendant for assessment purposes, it is well known that property is never assessed for its full value, and, in my judgment, this evidence is of little consequence in determining the issue here. Neither do I attach much importance to the statement of the assessor whose conclusions are based on general assumptions rather than a critical examination of the property in detail as was made by the appraisers in the state court and the witnesses who testified in the present case.

I think it proper to assume, and in fact it was admitted at the argument, that the record contains all the evidence introduced at the hearing before the master.

The tenth assignment is of a general nature and is covered by what has been heretofore said. My belief is that the evidence fairly preponderates in support of the conclusion reached by the master, and I am, therefore, constrained to hold that his findings should be affirmed. Proper decree should be presented.